UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CRAIG DEVON THOMPSON SR.,

  Petitioner,

  v.           Case No. CV07-00477(RCL)

DISTRICT OF COLUMBIA, and
DEPARTMENT OF CORRECTIONS, et al.,

  Respondents.

*Let this be filed.*
*Royce C. Lamberth*
*U.S.D.J. 1/10/08*

### A MOTION FOR RECONSIDERATION OF A FINAL ORDER

The above-styled petitioner, under the auspice of his own volition, respectfully moves this Honorable Court for permission insofar as a Motion for Reconsideration of a Final Order. Fed. R. Civ. Proc. Rules: 60(b) and 6(b)

In support hereof petitioner avers the following:

#### A. PRO SE LITIGATION

Petitioner rely upon the Supreme Court's announcement <u>Haines v. Kerner</u>, 404 U.S. 519 (1972), heretofore, construes pro se litigation in a liberal fashion and not so rigid as an trained attorney. Id.

#### B. PROCEDURAL FACTS

In or about December 3, 2007, this court issued a final order [inter alia], "denying as moot... inasmuch as the case was dismissed on September 24, 2007. <u>See</u> Court Order.

With the listed Order post-dated December 3, 2007, petitioner now questions the right to service and reply before the district court's dismissal of a writ of habeas corpus.

Thus, petitioner submits a memorandum of law, articulating facts that should authorize granting Fed. R. Civ. Proc. Rule(s) 60(b) and 6(b) (as

RECEIVED
JAN 10 2008
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

RECEIVED
JAN 10 2008
CHAMBERS OF
JUDGE LAMBERTH

justice requires.

WHEREFORE, the cause, it is deem fair and just that Fed. R. Civ. Proc. Rule(s) 60(b) and 6(b) be hereby granted contemporaneously.  FIAT JUSTICIA!

Dated: December    , 2007.

Respectfully submitted,

/s/ _____
Craig Devon Thompson Sr. Fed# 11220-007
U.S.P. Lee County
P.O. Box 305
Jonesville, VA 24263

Date signed December 27, 2007: Verified by:

Felicia Cason

Notary Registration # 7044959

(no notary stamp)

My Commission Expires on Oct. 31, 2010

```
                    UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF COLUMBIA

CRAIG DEVON THOMPSON SR.,        :
                                 :
        Petitioner,               :
                                 :
        v.                       :        Case No. CV07-00047(RCL)
                                 :
DISTRICT OF COLUMBIA, and        :
DEPARTMENT OF CORRECTIONS, et al.,:
                                 :
        Respondents.             :
```

### MEMORANDUM OF LAW IN SUPPORT A MOTION FOR RECONSIDERATION

This court bares discretion, pursuant to Fed. R. Civ. Proc. 6(b) and Fed. R. Civ. Proc. 60(b) to modify its order when the act done was the result of "excusable neglect." See, <u>Inv. Servs. Co. v. Brunsio Ltd. P'Ship</u>, 507 U.S. 380, 113 S.Ct. ___, 123 L.Ed 74 (1993). The court set forth factors to consider when determining what kind of neglect will be considered "excusable." These include: (1) the danger of prejudice to the party opposing the modification, (2) the length of delay and its potential impact on judicial proceedings, (3) the reason for the delay, including whether it was within the reasonable control of the movant, and (4) whether the movant acted in good faith. Id. at 395, 113 S.Ct. at 1498.

In the case sub judice, petitioner deems circumstances beyond his control thru failure to service the September 24, 2007 Order "dismissing" his original writ of habeas corpus. See, <u>Compton v. Alton Steamship Co.</u>, 608 F.2d at 104.

Reliance upon dictum, the Fourth Circuit stated, "Rule 60(b) does not confine the "mistake" for which vacation of judgment may be had to mistake by the moving party. It is true that, as originally drafted, the rule was restricted to relief from "his mistake," meaning that of the moving party. But with the 1946 revision "his" was omitted from the rule. The Advisory

Committee's Note explains the omission, was prompted by the feeling that the personal "pronoun his has been eliminated on the basis that it is too restrictive, and that the subdivision should include the mistake or neglect of others which may be just as material and call just as much for supervisory jurisdiction as where the judgment is taken against the party through his mistake, inadverence, etc." Despite, this view, Professor Moore, suggests that, as a result of this change and certain other additions to the rule, a mistake of law by the court itself apparent on the face may support a vacation of the default under 60(b), especially if raised within the time allowed for appeal. See, 7 Moore's Federal Practice ¶60.22[3] at pp. 259-264.

Here, the principle concern is not whether petitioner defaulted on a claim, but rather, whether failure to service a final order is a clear error of law. See, Charles A. Wright & Arthur R. Miller, 11 Federal Practice and Procedure § 2857.

### A. Whether Or Not The District Court Inherent Judicial Powers To Stay A Final Order Under Excusable Neglect?

In or about December 3, 2007, the district court issued a final order "denying as moot petitioner's motion to stay... ' inasmuch as the case was dismissed on September 24, 2007.'"[1] The issue presented, then, is whether failure to service a district court's final order, disposes of the matter

---

1. The record reflects that the December 3, 2007 order, indicates a mailing date of December 6, 2007. However, the prison mailroom tender release of the December 3, 2007, on December 14, 2007. See, 28 C.F.R. § 540.19(a)("staff shall mark each envelop of incoming legal mail (mail from courts or attorney) to show the date and time of receipt, the date and time the letter is delivered to an inmate and open in the inmate's presence, and the name of the staff member who delivered the letter. The inmate may be asked to sign as receiving the incoming legal mail. This paragraph applies only if the sender has marked the envelop as specified in § 540.18.")).

2

under a "moot" analysis.  This analysis must be rejected.  First, the September order was crucial to the complexity and lucidity presented by the writ of habeas corpus.  See, <u>Carafas v. Lavalle</u>, 391 U.S. 234, 20 L.Ed.2d 554, 88 S.Ct. 1556 (1968)("the federal habeas corpus statute requires that the applicant must be 'in custody' when the application for habeas corpus is filed'").  Id. 391 U.S. at 237, 20 L.Ed.2d at 588.  This case illustrates that to "stay" the writ of habeas corpus solely to preserve a substantial issue of release from physical custody is fundamental of all rights.  Id. 391 U.S. at 239, 20 L.Ed.2d at 559.  See also, <u>Anyanwutako v. Moore</u>, 151 F.3d 1053 (D.C. Cir. 1998)("We read these cases to require that a state prisoner's section 1983 claim must first be brought in a habeas corpus only when, if successful, it would necessarily imply' or automatically result in a speeder release from prison.'").[2]  Id. at 1056.

Reiterating, the original writ of habeas corpus, petitioner contends enforcement of D.C. Code § 24-431(a) provides exactly the relief of release deem appropriate.  Section § 24-431(a) reads:

> "Every person shall be given credit on the maximum term of imprisonment for time spent in custody or on parole."

Id.

Petitioner alluded to this statute to ensure the liberty upon which this statute provides.  However, the district court contrary to common belief, adopted the respondents pleading surreptitiously announced by the National Capital Revitalization and Self-Government Improvement Act of 1997, Title XI of Pub. L. 105-33, § 11231, D.C. Code § 24-131(a)([codified at D.C.

---

2. Dismissal of petitioner's prior pleading[s] failed to account the interference of his repetitive transfers, his inartiful skills dictated under a liberal construction, and the detrimental hardships faced by compelling circumstances beyond his control.  See, <u>United States v. Sanchez</u>, 88 F.3d 1243, 1247 (D.C. Cir. 1996)("...holding them, 'however, inartifully pleaded, 'less stringent standards than pleadings drafted by attorney.'").

3

Code §§ 24-101 et. seq. (2001 & 2005)("Revitalization Act.").

Thus, petitioner contends the district court's obligatory enforcement of regulation by respondents conflicting prior points of law not resolved, abrogates the express intent of a writ of habeas corpus. See, Poole v. Fleeger, 36 U.S. 185, 198 (1837)(quoted in Smith, 5 Tex. L. Rev. at 233-34 n.9)); see also, Legal Stud. 373, 383 (1977).

> **B. Whether The Decision By The Irons v. Carey, Establishes A Live Cognizable Interest To Wit The District Court Failed To Decide On The Merit?**

In the case sub judice, petitioner finds the district court determination "moot" in complete contradiction of the announcement Irons v. Carey, Civ. S-105-0912 DFL K JMP, 2006 U.S. Dist. Lexis 18702 (E.D. Cal. Mar. 31, 2006).

First, the district court, quoting, McQuillion v. Duncan, 306 F.3d 895 (9th Cir. 2002), used the Greenholtz-Allen framework to determine whether California statutes created a liberty interest in parole. The critical statute at issue in McQuillion is California Penal Code Section 3041, which provides in relevant part:

> (a)... One year prior to the inmate's minimum eligible parole release date a panel.... shall be set in a manner that will provide uniform terms for offenses of similar gravity and magnitude in respect to their threat to the public, and that will comply with the sentencing rules that the Judicial Council may issue and any sentencing information relevant to the sentencing of parole release dates...

Id. * 2 of 6.

> (b) The panel... shall set release date unless it determines that... consideration of the public safety requires a more lengthy period of incarceration...

The Ninth Circuit found that subdivision (b) was like the statutes in Greenholtz and Allen.

Reiterating the Irons, dictum pays considerable guidance with the

4

case at bar. Simply because, the mandatory language "... shall be given credit on the maximum term of imprisonment, for time spent in custody '[or]' on parole.'" Squares with a command that the presumption of good time [§ 24-431(a)] is absolute.

Clearly, the syllogism in <u>Irons</u>, conveys the appropriate relief in the case here.

Both cases rely upon the mandatory language. See, <u>McQuillion v. Duncan</u>, 306 F.3d 895, 900 (9th Cir. 2002); see also, <u>Biggs v. Terhune</u>, 334 F.3d 910 (9th Cir. 2003). Thusforth, over ruling the respondents shotgun blaste "liberty interest" and the district court's September 2007 order.

### (i) EQUITY

As a discretionary doctrine, petitioner request that an "equitable tolling" be enforced. See, <u>Miller v. New Jersey, State Dep't of Corrections</u>, 145 F.3d at 618-19 (noting that tolling is proper where "the petitioner has in some extraordinary way... been prevented from asserting his or her rights" despite exercising "reasonable diligence investigating and bringing [the] claims.'" (citations and internal quotation marks omitted).

Here, equitable consideration justify tolling in this case because this misread deadline was the result of an mistake or inadvertence failure to certify service of pleadings external to the district court's authority to "relieve a party." See, 28 U.S.C. § 2106.3.[3]

---

3. § 2106 "... [,] modify, vacate, set aside or reverse any judgment, decress, or order of a court lawfully brought before it for review..."

### (ii) CASE OF CONTROVERSY

Even "if" this court finds no rational grounds readjudicating the Writ of habeas corpus, there remains a case of controversy that accured. For instances, the motion to stay the case was a liberal intent to pro-long the adjudication of the writ of habeas corpus to afford petitioner an opportunity to amend the original writ of habeas corpus while in transportation to a designated institution.[4] See, County Motors v. General Motors Corp., 278 F.3d 40, 43 (1st Cir. 2002)(internal quotation marks omitted). Generally speaking, one such circumstance mooting a claim arises when the claimant receives the relief he or she sought to obtain through the claim. See also, Simpson v. Camper, 974 F.2d 1030, 1031 (8th Cir. 1992)(case was moot where state court granted "precisely the same relief," that was requested in federal court.

In the case presented, petitioner sought that his "street time" promulgated in accordance with D.C. Code § 24-431(a) contemporaneously expires his 1992 sentence imposed by the Honorable Judge Fredrick Weisberg. Moreover, petitioner was in transit, unable to receive the September 24, 2007 order henceforth deprived the only opportunity to present his claim or claims sufficiently. Id. 278 F.3d at 42. In respect here, it is fair and just that this court reopen this case, authorizing petitioner a chance to amend his petition as cause to survive dismissal.

### C.  FAILURE TO ADJUDICATE ON THE MERITS

Pursuant to Federal Rules of Civil Procedure [F.R.C.P.] Rule 15(c), petitioner "relates back" to his original petition under a writ of habeas corpus. See, Cf. Burlington Northern R. Co. v. Woods, 480 U.S. 1 (1987);

---

4. Relatively speaking, dismissing the writ of habeas corpus belays a rigid analysis of Haines v. Kerner, 404 U.S. 519 (1972). Here, petitioner submitted a motion to stay the writ of habeas, solely to reach his destination with the Bureau of Prisons and to devoid any deficiencies on behalf of his claims. See, Fed. R. Civ. Pro. Rule 15(c) "related back", and Fed. R. Civ. Pro. Rule 81(a)(2).

Stewart Organization v. Ricoh, 180 S.Ct. 2239 (1988). Whatever, may be the controlling body of limitations law, if that law affords a more forgiving principle of relation back than the one provided in this rule, it should be available to save the claim. Accord, Marshall v. Mulrenin, 508 F.2d 39 (1st Cir. 1974). In the case sub judice, no service was issued Schiavone v. Fortune, 106 S.Ct. 2379 (1986), thus, failure to meet Civ. R. 4m, such inconsequential error sustains a limitation of dismissal. Id. F.R.C.P. Rule 15(c).

**(i) AMENDED CLAIM:**

### BILL OF ATTAINDER

Article I, Section 9 of the constitution provides:

> "No Bill of Attainders or Ex Post Facto law shall be pasted."

Id. Raoul Berger, Bills of Attainder: A Study of Amendment by the Court, 63 Cornell L. Rev. 355, 373-76 (1978) [hereafter Berger]; see also, 1 JAC. 2, c.2 (1685), quoted in Nixon v. Administrator of General Service, 433 U.S. 425, 475 (1977).

The Supreme Court has hewn to the position that the ex post facto clause's prohibit criminal penalties only, the court has also, appropriately, applied the clause in civil cases where the civil disabilities are disguised as criminal penalties. See, Berger, 63 Cornell L. Rev. at 373-376.

The Berger court offered credence by stating, "in determining whether legislation that bases a disqualification on the occurring of a certain past event imposes a punishment, the court has sought to discern the objects on which the enactment in question was focused."

Hence reiterating Justice Frankfurter's proselyte:

> "The mark of an ex post facto law is the imposition of what can fairly be designated punishment for past acts.

> The question in each case where unpleasant
> consequences are brought to bear upon an
> individual for prior conduct, is whether
> the legislative aim was to punish that
> individual for past activity, or whether
> the restriction of the individual comes
> about as a relevant incident to a regulation
> of present situation, such as the proper
> qualification for a profession."

Id. see, Deveau v. Braisted, 363 U.S. 144, 160 (1960).

Petitioner, emphatically concurs that ex post facto clause bars civil and criminal laws. See, Lehman v. Carlson, 353 U.S. 683, 690-91 (1957). Thus, it is reasonable to apply a broader application of the clause to fulfill its original intentions. See, Marcello v. Bonds, 349 U.S. 302, 319 (1955) (Douglas, J., dissenting).

In light of the above indicia application of both D.C. Code § 24-206(a) and § 24-431(a) simultaneous expands the punishment invalidating liberty on past conduct subversive to the constitution. See, Landgraf v. USI Film Products, 511 U.S. 244, 272, 114 S.Ct. 1483, 1500, 128 L.Ed.2d 299 (1994)(quoting Bowen v. Georgetown Univ. Hosp., 488 U.S. 204, 208, 109 S.Ct. 468, 471, 102 L.Ed.2d 493 (1988)(internal quotation marks omitted).

Under the authority provided within the Bill of Attainder, freedom from ex post facto laws are the only two individual liberties that original constitution protects from both federal and state intrusion. Art. I, Sect. 10 of the Const.

(ii) **AMENDED CLAIM:**

**Whether The Contract Clause Prohibits Enforcement Of Both D.C. Code § 24-206 (a) And D.C. Code § 24-431(a)?**

Petitioner argues that failure of this court to apply the contract clause in a liberal text ruling that § 24-206(a) bars "retroactive" repealment of the Good Time Act diluted the fundamental right of due process. See, United States Trust v. New Jersey, 431 U.S. 1 (1977); Reynoldsville v. Casket, 514

8

U.S. at 761 (Kennedy, J., concurring).

In this case, there exist "exceptional facts," which dictate the "envisionary prospect ruling that is now required under due process or a constitutional command. Id. 514 U.S. at 761-62. This case presents a hard question which echo the grave disruption of inequity with retroactively repealment of the good time related to "street time." Simply because in a memorandum to Walter B. Ridley, Acting Deputy Director for Operations, Department of Corrections, Ms. Hines answered "yes" that section 5(a) of the Act gives the recommitted parole violator credit on the maximum term equal to the time served on parole. Ms. Hines is quoted as stating:

> "[T]he apparent reasons to repeal the Bill's failure expressly to repeal the inconsistent language of D.C. Code § 24-206 (1981) was that no one discovered the inconsistency..."

Id.

Ms. Hines, expressed that:

> "...had the council noticed the inconsistency, it would have expressly repealed the § 24-206 (a) ban on street time credit after a parole revocation."

(quoting Luck, 617 A.2d at 512).

Examination here, it is no secret that the USPC retards D.C. "Street Time" upon a prisoner's parole being revoked. However, because the District of Columbia vested its authority to the USPC failure to enforce the contract that the USPC will use D.C. Parole Policies to determine a D.C. prisoner's release impairs such contract and restricts the contract dramatically. See, Green v. Biddle, 21 U.S. (8 Wheat) 1, 84 (1823)(Washington, J.)(defining an "impairment of the obligation" of contract).

Despite its seemingly all-embracing terminology between the District of Columbia, and the USPC, the insubornation with applying etched in stone D.C.

9

laws weakens the substantive protection of due process.

**(iii) AMENDED CLAIM:**

### Separation Of Powers And Due Process

The long tradition of retroactive legislation, and the constitution's recognition that some retroactive legislation is permissible, make it impossible to accept the argument that a "retroactive" imposition of liability is not a valid "law" as Justice Chase argued in <u>Calder v. Bull</u>, 3 U.S. 386, 388 (1789)("for I cannot call it law").

Petitioner contends, the specific language declared by the Honorable Judge Weisberg, "not more than 15 years in 1992,"contradicts the prescribed rules of decision to the judicial department of the government. See, <u>Plaut v. Spendrift Frams</u>, 514 U.S. 211 (1995).

In the listed case, the Supreme Court relied on separation of powers principle to strike down retroactive legislation purporting to "prescribe what the law was at an earlier time, when the Act whose effect is controlled by legislature occurred." Id. 225. In invalidating this statute, Justice Scalia, writing for the majority, reviewed the constitutional history that gave rise to the separation of the state legislatures from 1790 to 1787 to "correct" judicial judgments. Id. The court established, one key purpose of art. III, Scalia demonstrated, was to guard against the legislative annulment of final judgments. According to Justice Scalia, the constitution prohibits retroactive legislation that "requires its own application in a case already finally adjudicated;" id. 224, such legislation "does no more and no less than reverse a determination once made, in a particular case." Id. (quoting the Federalist No. 81).

In this case, there appears a powerful temptation, to which the district court succumbed, by declaring retroactive legislation beyond the finality of a judicial sentence or without jurisprudence. Clearly, this court acknowledges

10

that, cases that have been finally adjudicated may not be affected by the legislature, and/or (somewhat) "fuzzy" limits on the legislative's ability to prescribe the rules of a decision in a particular pending case or cases. Thoeretically, to do so, bares an annulment to a court's final judgments.

Today, the challenge is to support the proposition that due process shall be offended by legislation that unambiguously declares retroactivity. Where legislation is not clear; evenwithstanding, if the presumption of prospectivity is not applied to ensure conflicting application, of which a party may be able at least to claim that ambiguity of two enacted legislative statutory provisions violates due process.

Certainly, the Fifth and Fourteenth Amendments prohibits the federal and state governments, respectively, from depriving any person "life, liberty, and property" without due process of law. Courts often apply the due process clause to require that a person be accord the appropriate process; which they have also found to have a substantive component. This oxymoronic, as John Hart Ely quipped, "'substantive due process' is a contradiction in terms - sort of like saying 'green pastel redness.'" Id. John Hart Ely, Demoncracy and Distrust 18 (1980).

This said, petitioner deems "substantive due process," must assess the "reasonableness" of the statute being applied. Although, courts have struck down retroactive legislation as, by definition, failing to provide adequate notice, and thus the "process" that was "due." This meaning, beholds a vested right to his liberty from a sentence of which, cannot exceed fifteen years. See, Black's Law Dictionary on vested rights.

Vested rights:

> [R]ight which have so completely and definitely accured to or settled in a person that they are not subject to be defeated or canceled by the act of any other private person, and which it is right and equitable that the government

11

> should recognize and protect, as being
> lawful in themselves,... such interest as
> cannot be interfered with by retrospective
> laws..."

Id. Black's Law Dic. 1564 (6th ed. 1990).

Henceforth, application of both D.C. Code § 24-206(a) and § 24-431(a) to a term not to exceed fifteen years carries a reasonable interpretation of ambiguity in complete contrust to judicial antonomy. See, General Electric v. EPA, 53 F.3d 1324 (D.C. Cir. 1995)(quoting Rollins Environment Service v. EPA, 937 F.2d 649 (D.C. Cir. 1991).

Reading the literal dictum in Rollins and General Electric, there is no question this court should conclude, "no reasonable reader of both § 24-206(a) and § 24-431(a) would acquiescence notice, as to which statute attributes liability above the fifteen year maximum. See, United States v. Olin, 927 F.Supp. 1502 (S.D. Ala. 1996)("after this manuscript had been commissioned, my firm was asked to submit an amicus curiae brief in this case on behalf of a long-standing client, the insurance Environment Litigation Association Played a role in drafting that brief, which contends that CERCLA should not be applied retroactively). Id. Freeman Liability, 42 Bus Law at 221-22.

Identical to CERCLA decision, and George Freeman's dictum, application of D.C. Code § 24-206(a) eviserating good time, poses a "standardless delegation" in violation of the separation of powers..." Id. Freeman, Liability, 42 Bus Law at 229-239.

(iv) **AMENDED CLAIM:**

### Rule Of Lenity

Related to due process, and to the anti-retroactivity principle, is the notion that a statute can be void for vagueness because it is not sufficiently clear against those affected by the statute or statute(s) with adequate notice of the legislature's intention. See, A.B. Small Co. v. American Sugar Refining

12

Co., 267 U.S. 233, 239 (1925)(quoting <u>United States v. Cohen Grocery Co.</u>, 255 U.S. 81, 89 (1921). The specific issue here, is whether two statutes pertaining to good time attribution riddle with ambiguity and presumption with how the courts are bound to adjudicate, should and must constitute the rule of lenity. See, <u>United States v. Callanan</u>, D.C. Mo. 173 F.Supp. 98, 100 ("where the intention of Congress is not clear from the act itself and reasonable minds might differ as to its intention, the court will adopt the less harsh meaning"). Id.

Arguably clear, D.C. Code(s) §§ 24-206(a) and 24-431(a) engages in Retorical-rhapsody, that's much like, "an unruely horse, upon which you astride you no not where it might take you."

In view of this fact, it is requested that this court enforce the rule of lenity, authorizing full benefit of § 24-431(a) to all time spent on the street, and authorizing that D.C. Code § 24-431(a) controls during and before the United States Parole Commission.

## CONCLUSION

WHEREFORE, the stated cause, it is requested the writ of habeas corpus is reopen, his motion to amend granted, and justice administered as is within this court's power.   FIAT JUSTICIA!

Dated: December 27, 2007.

Respectfully submitted,

_____
Craig Devon Thompson Sr. Fed# 11210-007
U.S.P. Lee County
P.O. Box 305
Jonesville, VA 24263

Date Signed: December 27, 2007.

Verified by: Felicia Caution
Notary registration # 7044959
(No notary stamp)
My Commission Expires on: Oct. 31, 2010

13

## CERTIFICATE OF SERVICE

I hereby certify that on this 27th day of December, 2007, the enclosed documents were placed in the jailers care, prepared U.S. postage to the listed parties:

cc: Linda Singer
    Attorney General
    For The District of
    Columbia

cc: George C. Valentine
    Deputy Attorney General
    Civil Litigation Division

cc: Kimberly M. Johnson #435163
    Section Chief
    General Litigation Section I

cc: Lucy Pittman #483416
    Assistant Attorney General
    441 4th Street, N.W.
    6th Floor South
    Washington, D.C. 20001

cc: Tricia D. Francis
    Assistant United States Attorney
    Special Proceedings Division
    D.C. Bar No. 457-800
    555 4th Street, N.W., Room 10-447
    Washington, D.C. 20530

cc: Robert Okun
    Assistant United States Attorney
    Chief, Special Proceedings Division
    D.C. Bar Number 457-078

c/o Clerk of the Court
    U.S. District Court
    For The District of Columbia
    333 Constitution Ave., N.W.
    Washington, D.C. 20001-2866

_C. S._ _____

Craig Devon Thompson Sr.  FED# 11220-007
U.S.P. Lee County
P.O. Box 305
Jonesville, VA 24263

Verified by: Felicia Carr
Notary Registration # 7044959
(no notary stamp)
Date Signed: December 27, 2007
My Commission expires on Oct. 31, 2010